UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-2432(DSD/SER)

Danny Fischer,

        Plaintiff,

v.     **ORDER**

Minneapolis Public Schools,

        Defendant.

    Thomas E. Marshall, Esq. and Engelmeier & Umanah, P.A., 12 South Sixth Street, Suite 1230, Minneapolis, MN 55402, counsel for plaintiff.

    Jonathan P. Norrie, Esq., Kerri J. Nelson, Esq. and Bassford Remele, PA, 30 South Sixth Street, Suite 3800, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to exclude expert testimony and the motion for summary judgment by defendant Minneapolis Public Schools (MPS). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion for summary judgment and denies as moot the motion to exclude.

**BACKGROUND**

This employment dispute arises out of the December 2011 decision by MPS to not recall plaintiff Danny Fischer from layoff status. Fischer began working for MPS as a Janitor Engineer in March 2008. Compl. ¶ 3. On July 1, 2010, Fischer was placed on

layoff status from which he was eligible to be recalled. See Fischer Dep. 33:25.

On December 8, 2011, MPS contacted Fischer to initiate his recall. Id. Ex. 6, at MPS00260. As part of the recall process, MPS required Fischer to pass a physical assessment administered by Cost Reduction Technologies, LLC (CRT). See id. Ex. 7, at MPS00263. The assessment "measure[d] the physical strength put forth by the individual on [an] isokinetic CRT machine." Crosby Decl. ¶ 6. As part of the assessment, participants were required to operate the CRT apparatus using their arms, legs and back. Fischer Dep. 46:21-23. MPS required all Janitor Engineers subject to recall after August 2011 to earn a score of at least 201 on the assessment, which corresponded to a designation of "Medium-Heavy." Crosby Decl. ¶ 3. Such designations related to different positions of employment with MPS to which were assigned specified ranges based on the physical demands of each position. See, e.g., Bendel Dep. Ex. 18, at DF-098. MPS policies did not permit individuals to retake the assessment if they did not pass on the first attempt. Bendel Decl. ¶ 2.

Fischer received a composite score of 197.5, which corresponded to a physical strength designation of "Medium." Fischer Dep. Ex. 9, at DF-095. The composite score was computed using scores from portions of the exam relating to arm, leg and back performance. See Fischer Dep. 69:25-70:4. CRT determined

that Fischer had passed the portions of the exam relating to arm and leg strength, but that the evaluation of his back placed his composite score below the "Medium-Heavy" range.  Id.  In mid-December, CRT communicated Fischer's composite score to MPS.  See Crosby Decl. ¶ 5.  On December 18, 2011, MPS contacted Fischer and informed him that he had failed the CRT assessment and would not be recalled.  Fischer Dep. 54:4-7.  Fischer requested to retake the examination, but was not allowed to do so.  Compl. ¶ 14.  In late January, CRT President Brett Crosby told Fischer that the score specific to Fischer's back had negatively impacted the composite score.  Fischer Dep. 69:7-70:10.  MPS thereafter told Fischer that he had not been recalled "because of [his] back and [because he] didn't pass a physical."  Id. at 90:9-21.

On September 20, 2012, Fischer filed a complaint, alleging (1) disability discrimination under the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA) and (2) reprisal under the MHRA.[1]  MPS moves for summary judgment.  MPS also moves to exclude the expert report and testimony of Fischer's expert, Dr. Thomas Jetzer.

---

[1] To the extent that Fischer alleges that requiring the assessment was a per se violation of the ADA and the MHRA, such claims were not pleaded and are not properly before the court.  See Cossette v. Minn. Power & Light, 188 F.3d 964, 968 (8th Cir. 1999).

3

**DISCUSSION**

## I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II.  Disability Discrimination**

Fischer first argues claims for disability discrimination under the ADA and MHRA.  Both statutes prohibit employers from discriminating against individuals because of a disability.  See 42 U.S.C. § 12112(a); Minn. Stat. § 363A.08, subdiv. 2.  The term "disability" means (1) a physical or mental impairment that substantially limits[2] one or more major life activities, (2) a record of such impairment or (3) being regarded as having such impairment.  42 U.S.C. § 12102(1).  Fischer argues that MPS regarded him as being disabled.[3]  An individual is regarded as having a disability if he or she has been discriminated against "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  Id. § 12102(3)(A).[4]

---

[2] The MHRA uses a "materially limits" standard rather than the "substantially limits" standard.  See Minn. Stat. § 363A.03, subdiv. 12.  Other than that exception — which is not relevant here — the ADA and MHRA are analyzed under the same standard.  See Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 789 (8th Cir. 2004).

[3] Fischer concedes that he does not suffer from any actual disability.  Fischer Dep. 74:16-22.

[4] The MHRA defines an individual "regarded as" disabled as one whom others regard as having an impairment "which materially limits one or more major life activities."  Minn Stat. § 363A.03, subdiv. 12.  Because the disability discrimination claim fails even under the less stringent standard of the ADA, the court need not consider whether this difference creates different standards under federal and state law.

5

In the absence of direct evidence, "regarded as" disability claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Norman v. Union Pac. R.R. Co., 606 F.3d 455, 459 (8th Cir. 2010). Under McDonnell-Douglas, Fischer must first make a prima facie showing that (1) he is regarded as disabled within the meaning of the ADA, (2) he is qualified to carry out the essential functions of the position and (3) he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. See Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the action. Id. at 516-17. The plaintiff may then rebut the defendant's justification by presenting evidence that the proffered reason is "pretextual and based on intentional discrimination." Id. at 519 (citation omitted). MPS argues that Fischer cannot establish a prima facie case because he was not regarded as disabled. Fischer argues that MPS regarded him as disabled as demonstrated by (1) his CRT assessment score and (2) statements made by MPS.

**A.   CRT Assessment**

Fischer first argues that the CRT assessment score itself demonstrates that MPS regarded him as disabled. An employer, however, may generally make pre-employment inquiries into the ability of an applicant to perform job-related functions or require

6

post-offer medical inquiries and examinations. See 29 C.F.R. § 1630.14. In other words, the ADA and MHRA distinguish between being regarded as physically unqualified for a particular job and being regarded as "disabled." See Conant v. City of Hibbing, 271 F.3d 782, 785-86 (8th Cir. 2001) (per curiam).

Here, MPS used the CRT assessment to evaluate physical capabilities and match individuals to the strength requirements of various positions of employment. Due to his score, Fischer was excluded from the job for which he was being considered for recall. Such exclusion due to a failure to fulfill a condition of employment, however, is not sufficient to create a genuine issue of material fact as to whether MPS regarded him as disabled. See Jenkins v. Med. Labs. of E. Iowa, Inc., 880 F. Supp. 2d 946, 960 (N.D. Iowa 2012). Indeed,

> an employer does not perceive an employee as disabled merely by determining the employee to be unable to temporarily satisfy the requirements of a singular position ... [Otherwise,] anyone who failed to obtain a single job because of a single requirement of employment would become [disabled] because the employer would thus regard the applicant's failure as a [disability].

Fuqua v. Unisys Corp., 716 F. Supp. 1201, 1207 (D. Minn. 1989) (third and fourth alterations in original) (citations and internal quotation marks omitted). Here, such a conclusion is supported by

7

the fact that MPS would have allowed Fischer to reapply for other open positions, or even the same position at a later date. See Strombeck Dep. 64:19-24.

Fischer also relies on the conclusion of his proposed expert, Dr. Thomas Jetzer, to argue that MPS regarded him as disabled based on his CRT assessment score. Specifically, Dr. Jetzer concludes that "[b]y claiming that [Fischer] did not pass the test ... [MPS has] disqualified him and considered him impaired." Jetzer Decl. Ex. B, at 7. As already explained, however, a failing score on such an assessment is not equivalent to a finding that the employer regarded the assessed individual as disabled. Moreover, Dr. Jetzer examined Fischer in 2013 and has no basis to opine on whether MPS regarded Fischer as disabled in 2011. Id. at 1. Finally, such bald assertions are insufficient to create a genuine issue of material fact. See Lee v. Andersen, 616 F.3d 803, 809 (8th Cir. 2010) ("Opinions that merely tell the [factfinder] what result to reach are not admissible." (citation and internal quotation marks omitted)); see also Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 913 (8th Cir. 2006) (noting that plaintiff must present evidence supporting disputed material facts). As a result, given the lack of evidence supporting such an argument, no reasonable jury could conclude that the CRT assessment score alone demonstrates that MPS regarded Fischer as disabled.

## B. Statements by MPS

Fischer also argues that statements made by MPS after declining to recall him demonstrate that MPS regarded him as disabled. Specifically, Fischer argues that Lisa Strombeck, Director of Risk Management for MPS, told him that he had not been recalled "because of [his] back and [he] didn't pass a physical." Fischer Dep. 90:9-12. Fischer also argues that MPS employee Gregory Bendel told him that he "did not pass based on [his] back."[5] Fischer Dep. 90:19-21. Fischer has adduced no evidence, however, that any MPS employee attributed his CRT assessment score to any perceived impairment. Indeed, Fischer's mother testified that MPS employees stated that Fischer did not appear to have any

---

[5] Fischer also argues that the response to his EEOC discrimination complaint — in which MPS stated that Fischer was "incapable of pulling, carrying, pushing, or lifting a heavy load, creat[ing] a substantial risk of injury in the workplace" — demonstrates that it regarded him as disabled. See Alfredson Dep. Ex. 7, at MPS00213. MPS, however, provided this statement in May 2012, approximately five months after its determination not to recall Fischer. See Hill v. St. Louis Univ., 923 F. Supp. 1199, 1208 n.5 (E.D. Mo. 1996) (observing that the response to an EEOC investigation occurred after the alleged discriminatory action and "thus, [was] irrelevant to the issue of discriminatory treatment leading up to ... the discriminatory event"). Further, the EEOC response was made by an MPS attorney, rather than the individuals involved in the determination not to recall Fischer. See Alfredson Dep. 66:19-25; see also Young v. United Parcel Serv., Inc., 707 F.3d 437, 444 (4th Cir. 2013) ("[W]here an employee relies on a 'regarded as' disabled theory, we focus on the reactions and perceptions of the employer's decisionmakers ...." (second alteration in original) (citations and internal quotation marks omitted)), petition for cert. filed, 81 U.S.L.W. 3602 (U.S. Apr. 8, 2013) (No. 12-1226). As a result, the response to the EEOC complaint is not probative of whether MPS regarded Fischer as disabled during the relevant time period.

disability relating to his back. See Furey Dep. 74:25-75:3. Moreover, the statements at issue merely restated the facts relating to Fischer's performance on the CRT assessment. Fischer's post-hoc interpretation of such statements as suggestions that MPS regarded him as disabled is irrelevant. Indeed, other than Fischer's subjective perceptions, there is no evidence from which a reasonable factfinder could conclude from these statements that MPS regarded him as disabled. See e.g., McNally v. Aztar Ind. Gaming Co., No. 3:12-cv-00063, 2014 WL 300433, at *3 (S.D. Ind. Jan. 28, 2014) ("These facts, even viewed in the light favorable to [plaintiff], fall short of showing that [defendant] perceived him as having a ... disability, and the [c]ourt concludes no reasonable jury could make such a finding."). As a result, summary judgment is warranted on the disability discrimination claim.[6]

---

[6] To the extent that Fischer alleges claims for failure to accommodate and for failure to engage in an interactive process, such arguments also fail. An individual must show "that he is a qualified individual with a disability in order to state a valid claim for failure to accommodate." Kirkeberg v. Can. Pac. Ry., 619 F.3d 898, 906 n.4 (8th Cir. 2010) (citations and internal quotation marks omitted). Further, "[t]o establish that an employer failed to participate in an interactive process, a disabled employee must show ... the employee could have been reasonably accommodated but for the employer's lack of good faith." Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1021 (8th Cir. 2000) (citation omitted). As already explained, however, Fischer is not disabled and MPS did not regard him as such. As a result, any claims premised on failure to accommodate or participate in an interactive process necessarily fail.

**III.   MHRA Reprisal**

Fischer next argues that MPS violated the MHRA by retaliating against him. In the absence of direct evidence of reprisal, such claims are again analyzed under the McDonnell Douglas burden-shifting framework. See Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 548 (Minn. 2001). "Under the MHRA, to establish a prima facie case for a reprisal claim, a plaintiff ... must establish the following elements: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." Bahr v. Capella Univ., 788 N.W.2d 76, 81 (Minn. 2010) (citation and internal quotation marks omitted). The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse action .... If the defendant advances a legitimate reason for the [adverse employment action], the plaintiff bears the burden of demonstrating the defendant's stated reason is a pretext for [reprisal]." Macias Soto v. Core-Mark Int'l, Inc., 521 F.3d 837, 841 (8th Cir. 2008) (citations omitted).

Specifically, Fischer argues that his request to retake the CRT assessment was a request for accommodation and that MPS declined to recall him because he made such a request. Even if the request constituted protected conduct, however, the determination not to recall Fischer had already been made before the request. Fischer Dep. 54:4-7; see Evans v. Wal-Mart Stores E., L.P., No.

11

2:08-cv-2110, 2009 WL 2905584, at *7 (W.D. Ark. Sept. 4, 2009) (finding that where protected conduct occurred after employee was already on leave, "there can be no causal connection between her leave and her complaint for retaliation purposes"). In other words, because the adverse employment action occurred before the request, there is no probative "temporal connection between the protected conduct and the adverse employment action." Thompson v. Bi-State Dev. Agency, 463 F.3d 821, 826 (8th Cir. 2006) (citations and internal quotation marks omitted). Fischer also argues that MPS retaliated against him for making complaints of disability discrimination. Fischer's first complaint, however, was a grievance filed with the union after MPS declined to recall him. See Fischer Dep. 31:15-18. Similarly, Fischer's EEOC complaint in April 2012 was made approximately four months after MPS declined to recall him. See Second Nelson Decl. Ex. I. Given such timing, the union grievance and EEOC complaint cannot support a reprisal claim. As a result, Fischer cannot establish a prima facie case of reprisal, and summary judgment on the MHRA reprisal claim is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   Defendant's motion for summary judgment [ECF No. 18] is granted.

2. Defendant's motion to exclude expert testimony [ECF No. 25] is denied as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 28, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court
